Dean G. Dunlavey, Asst. U.S. Atty., Crim. Div., Los Angeles, Cal., for plaintiff-appellant.

Thomas E. Holliday, Charles J. Stevens, Gibson, Dunn & Crutcher, Los Angeles, Cal., for defendant-appellee.

Before NORRIS, HALL and KOZINSKI, Circuit Judges.

WILLIAM A. NORRIS, Circuit Judge:

**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Craig E. CALDWELL, Defendant–Appellee.**

No. 88–5037.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 14, 1988.

Decided Oct. 20, 1988.

In *United States v. Akmakjian,* 647 F.2d 12, 14 (9th Cir.), *cert. denied,* 454 U.S. 964, 102 S.Ct. 505, 70 L.Ed.2d 380 (1981), we held that the five-year statute of limitations codified at 18 U.S.C. § 3282 was not jurisdictional and could be waived by a defendant. We are now called upon to decide whether a written agreement providing for an indefinite extension of the limitation period is valid and enforceable. The district court, after noting that such open-ended waivers undermine the policy concerns which animate the statute of limitations, held that such waivers could only be upheld if the government could justify their use by demonstrating extraordinary circumstances. Finding no extraordinary

circumstances in this case, the district court granted defendant Craig Caldwell's motion to dismiss the indictment against him as time-barred, notwithstanding that the open-ended waiver was executed by Caldwell through his attorney. Because we find no basis for distinguishing between limited-term and open-ended waivers, we reverse the district court's dismissal of the indictment.[1]

The district court, in requiring the government to demonstrate extraordinary circumstances to justify the open-ended waiver, fashioned a rule of law which is subject to *de novo* review. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

The government argues that the district court erred in subjecting open-ended waivers to a heightened level of judicial scrutiny. The government insists that as long as an indictment is brought within a reasonable period of time after a waiver, the waiver should be valid if it was executed knowingly and voluntarily. Caldwell, on the other hand, argues that the district court was not skeptical enough of open-ended waivers. He argues that if the public policy objectives which underlie the statute of limitations are to be served, courts should *never* uphold open-ended waivers.

We believe the government clearly has the better of this argument. At the outset, it bears repeating that our court has held explicitly that the statute of limitations is not jurisdictional and can be waived. *Akmakjian*. Thus, unless other lines of caselaw or public policy concerns compel a different result, the standard for acceptance of a waiver of the statute of limitations should be the same as the standard in other waiver contexts, *i.e.*, whether the waiver was knowing and voluntary. This standard was applied by the District of Columbia Circuit when it was confronted with a similar open-ended waiver of the statute of limitations:

"Constitutional rights which the defendant may waive include, *inter alia,* the right to be represented by counsel, the right not to be twice put in jeopardy, and the right to be tried in the district where the offense was committed. If the strong policies behind these rights are not violated by a 'rule permitting them to be waived by defendant, we cannot find that the limitation statute's policy is violated here where the defendant was fully cognizant of the consequences of such a waiver and decided to execute it on the advice of his attorney for his own benefit." *United States v. Wild,* 551 F.2d, 418, 424–25 (D.C.Cir.), *cert. denied,* 431 U.S. 916, 97 S.Ct. 2178, 53 L.Ed.2d 226 (1977) (citations omitted).

We find the *Wild* reasoning convincing. Nor has Caldwell directed us to any caselaw which looks the other way.

Caldwell points to a number of cases which strictly interpret the language of section 3282, which provides that the limitation period of five years is not to be extended "except as otherwise expressly provided by law." *See, e.g., United States v. Peloquin,* 810 F.2d 911 (9th Cir.1987); *United States v. Miller,* 830 F.2d 1073 (9th Cir. 1987), *cert. denied,* — U.S. —, 108 S.Ct. 1592, 99 L.Ed.2d 907 (1988). Caldwell places great reliance on this statutory language and these cases, arguing that they evince a Congressional intent to preclude *any* waiver of the statute of limitations. If Caldwell's reading of the statute were accepted, however, the rule in this circuit that the statute of limitations is not jurisdictional and can be waived in some circumstances, *see Akmakjian,* would be called into question. Moreover, the cases Caldwell relies upon do not involve *waivers.* Instead, they involve unilateral efforts by the government to extend the limitation period beyond five years.[2] It is unsurprising that

---

**1.** The district court refused to enforce Caldwell's waiver of the statute of limitations solely on the ground that it was open-ended. The district court did not find, and indeed Caldwell does not argue, that the government in fact delayed an unreasonable period of time before returning an indictment. As a result, that issue is not before us for decision.

**2.** The only case Caldwell cites in which a *waiver* was not upheld is *United States v. Harris,* 133 F.Supp. 796 (W.D.Mo.1955), *aff'd,* 237 F.2d 274

courts have permitted such unilateral extensions only if they are expressly provided for in the statute. By contrast, the extension agreement at issue here was bilateral. Indeed, it was sought by Caldwell and prepared by Caldwell's attorney.

Nor are Caldwell's policy arguments any more persuasive. He identifies a number of policy concerns served by the statute of limitations, and tries to demonstrate that these concerns are undermined by open-ended waivers. All of his policy arguments are flawed, however, in that they fail to distinguish between open-ended waivers and other types of waivers.

The first policy concern behind the statute of limitations Caldwell identifies is that of avoiding trials based upon stale evidence. As the district court recognized, the preference against the use of stale evidence furthers the values of judicial economy and convenience as well as the interests of individual defendants. What the district court failed to recognize, however, is that there is no basis for distinguishing between limited waivers and open-ended waivers when it comes to stale evidence. A long-term waiver with a fixed expiration date can lead to the use of stale evidence just as easily as an open-ended waiver. The real question in each case is whether the evidence was in fact stale because the prosecutor waited an unreasonably long period of time before returning the indictment.

A second public policy concern animating the statute of limitations relates to the incentive the statute creates for prompt law enforcement. The Supreme Court has noted that statutes of limitation "may ... have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity." *Toussie v. United States*, 397 U.S. 112, 115, 90 S.Ct. 858, 860, 25 L.Ed.2d 156 (1970). Open-ended waivers of statutes of limitation, Caldwell argues, reduce this incentive because they allow the prosecutor to buy time with which he can accomplish investigation he should have accomplished earlier. Once more, however, Caldwell's logic would call into question *all* waivers, because *all* waivers potentially enable the prosecutor to "buy time." [3] As we have indicated a number of times already, this circuit has already held that the statute of limitations is waivable. *See Akmakjian.* [4]

In sum, we believe that neither caselaw nor public policy concerns warrant special treatment of open-ended waivers. None of Caldwell's arguments effectively distinguish open-ended waivers from those of limited duration; indeed, Caldwell's attorney seemed to acknowledge this at oral argument when he shifted to the extreme position that all waivers are invalid—a position contrary to the law of this circuit. Unpersuaded by Caldwell's arguments, we hold that the district court erred as a matter of law in subjecting the open-ended waiver at issue in this case to an "extraordinary circumstances" test. Instead, the proper standard by which to judge the validity of open-ended waivers is whether they are entered into knowingly and voluntarily. *See Wild.* In this case, Caldwell does not, and indeed could not, argue on

(8th Cir.1956). In *Harris*, however, the court held that the statute of limitations is jurisdictional, a position that has been explicitly rejected by this circuit. *See Akmakjian.*

**3.** Moreover, this "salutary effect" is just that; spurring law enforcement officials is not the primary objective of the statute of limitations, and the Supreme Court has never suggested otherwise. Indeed, the dicta in *Toussie* quoted above appears after a passage in which the Court notes that "[t]he purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time.... to protect individuals...." 397 U.S. at 114, 90 S.Ct. at 860.

**4.** It is not an adequate response to say, as Caldwell's counsel did at oral argument, that limited-term waivers serve the defendant's interests whereas open-ended waivers do not. Indeed, it was Caldwell's attorney who first suggested and then prepared the open-ended waiver at issue here after two earlier fixed-term waivers had expired. It is readily apparent from the record that Caldwell and his attorney believed that all three waivers served Caldwell's interests by giving him time to try to dissuade the prosecutor from indicting.

this record that he did not agree to the waiver knowingly and voluntarily.

In spite of this, Caldwell argues—and the district court seemed to agree—that this particular waiver should not be enforced because the government improved its case against Caldwell during the period of time the waiver was in effect. We also find this reasoning unconvincing.[5] It is neither remarkable nor troubling that a waiver of the statute of limitations, whether for a fixed or indefinite period of time, provides the prosecutor with an opportunity for further investigation or to resolve calendar conflicts. Surely, the prosecutor is not expected to sit on his hands when a target of an investigation knowingly and voluntarily agrees to extend the statutory period for indictment. What the prosecutor may not do, of course, is unnecessarily delay an indictment during the additional time period. Here Caldwell does not claim that the indictment was unnecessarily delayed after the waiver or that the prosecutor acted in bad faith in agreeing to the waiver. Nor does he suggest that the government was not ready to indict Caldwell at the time the waiver was signed.

REVERSED and REMANDED.

---

**5.** In explaining its dismissal of the indictment, the district court also noted that the government did not seek prior judicial approval of Caldwell's waiver. Caldwell believes that this lack of prior judicial approval was *not* central to the district court's analysis and does not argue on appeal that prior judicial review is required. Brief of Appellee at 43. Accordingly, we need not address this question.